Affirmed and Memorandum Opinion filed December 23, 2003














Affirmed and
Memorandum Opinion filed December 23, 2003.

 

 

In The

 

Fourteenth Court
of Appeals

____________

 

NO. 14-00-00209-CR

____________

 

JORGE HUMBERTO TOBON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_______________________________________________________

 

On Appeal from the 230th District
Court

Harris County, Texas

Trial Court
Cause No. 796,891

 

_______________________________________________________

 

M E M O R A
N D U M   O P I N I O N

            Appellant Jorge Humberto
Tobon was found guilty of the offense of possession
of more than 400 grams of cocaine with the intent to deliver.  The jury sentenced him to twenty years’
confinement and ordered him to pay a $5,000 fine.  In four points of error, appellant claims (1)
accomplice testimony was not sufficiently corroborated and therefore the trial
court erred in admitting it; (2) without the accomplice testimony, the evidence
is legally insufficient to support the jury’s verdict; and (3) the cumulative
evidence is factually insufficient to support the verdict.  We affirm.








I.  Factual Background

            On January 12, 1998, appellant
rented an acetylene blowtorch from Aztec Rental, Inc.  Three days later, he was seen entering a
house that was under surveillance by the Houston Police Department
(“HPD”).  The police were monitoring the
house because they had received a tip that a large amount of cocaine was being
stored at the residence.  Appellant’s
brother, Oscar, owned the home.  Police
officers followed appellant from the house, and saw him returning equipment to
Aztec.

            On January 17, police followed Oscar
and his son, Edwin, as they left Oscar’s house. 
They met another man at a gas station, and saw Oscar engaging in a
heated argument with the man.  Oscar and
Edwin later went to a moving truck facility where Edwin rented a U-Haul
truck.  Edwin drove the truck from the
facility, and Oscar followed him in his car. 
The men drove to the restaurant where appellant worked.  They parked the U-Haul truck near the
restaurant and left together in the car. 
A short time later, Oscar and Edwin returned to appellant’s work place
and were followed by seven to eight males in a pick-up truck.  Oscar went into the restaurant and came out
with appellant.  Oscar then got into the
car with Edwin and drove away.  Appellant
got into the U-Haul truck with two men from the pick-up truck.  The men in the U-Haul truck and the remaining
men in the pick-up truck drove to Oscar’s house.  Appellant let the men into Oscar’s garage,
and the U-Haul truck was backed into the garage.  HPD officers saw appellant and the men
loading large cylinders into the back of the U-Haul truck. 

            After the men left Oscar’s house,
they drove to a nearby grocery store where they met Oscar and Edwin.  The U-Haul truck and the pick-up truck
followed Oscar and Edwin.  The undercover
officers followed the U-Haul truck and then called a patrol unit to initiate a
traffic stop on it after they noticed that none of the vehicle’s occupants were
wearing seatbelts.  A patrol officer
responded to the call, but stopped the U-Haul truck for failure to signal a
lane change.  The officer asked for
permission to search the U-Haul truck, and after
receiving consent in English and Spanish, opened the back of the vehicle and
found two large cylinders.  The cylinders
were new air compressor tanks, but each had a visible square pattern where it
had been cut open and re-bonded.  One
officer poked a bonded area on one of the cylinders with a screwdriver, and
withdrew the screwdriver to find a powdery substance that appeared to be
cocaine.  The substance tested positive
as cocaine; in fact, the cylinders contained over $15 million worth of cocaine.

            Several months later, Gabriel
Zavala, in exchange for leniency in a federal drug case, told police about his
involvement in the instant case and gave police additional information about
appellant’s participation in the scheme. 
According to Zavala, he was a friend of Oscar, and he had met appellant
through Oscar.  Oscar had asked Zavala to
assist him with a narcotics transaction. 
Zavala testified that he and Oscar picked up the cocaine and that Zavala
had transported it to Zavala’s home. 
Zavala later moved the cocaine to Oscar’s house.  Zavala testified that some time later he met
up with appellant and drove to Oscar’s house. 
There, the two cut open one of the cylinders with a blowtorch and
stuffed the cylinder with cocaine, blankets, and pillows.  Zavala stated that while working on the
cylinder, the two opened a couple of the packages of cocaine and ingested some
of it.  They then resealed the cylinder.  Zavala stated that he did not do anything
with the second cylinder.  Zavala did not
assist with transporting the cocaine on the day the police seized the
narcotics.  He testified that he did meet
Oscar at a gas station shortly after he had helped conceal the cocaine, and
that the two had gotten into an argument because Zavala wanted to wait to move
the narcotics.  This portion of Zavala’s
testimony was supported by police witnesses. 
The police officers who had followed Oscar on the day of the seizure
confirmed that Zavala was the person Oscar had argued with at the gas station
that day.  Moreover, the license plate
number the police had taken from the other car at the gas station was traced to
Zavala. 

            Zavala’s testimony proved helpful to
the police.  Before Zavala confessed his
involvement in the transaction, the HPD had not connected appellant’s return of
equipment to Aztec to the crime.  The
police then went to the rental company and discovered that, on the day
appellant was followed to Aztec, he had returned a blowtorch.

            Appellant testified he was unaware
of the narcotics transaction.  Appellant
said that he and his brother were not very close.  He stated he had rented a blowtorch for Oscar
so that he could cut the top off a car. 
According to appellant, Oscar had asked appellant to rent the blowtorch
because Oscar did not have a valid driver’s license to do so himself.  Appellant said he took the equipment to his
apartment, Oscar picked it up from the apartment, and appellant never saw the
equipment again.  Appellant testified
that on the day of the narcotics seizure, Oscar showed up at appellant’s work
place and asked him to help move some things. 
Oscar gave appellant his garage door opener and told appellant to direct
the other men to Oscar’s house and to assist them with loading some cylinders
in the garage.  Appellant was told to
meet Oscar at a nearby grocery store after the items were loaded.  Appellant contended he had no idea the
cylinders contained cocaine.

II.  The
Accomplice Testimony

            In
his first and second points of error, appellant claims the evidence was
insufficient to corroborate the accomplice testimony of Zavala.  We consider that assertion as a challenge to
the sufficiency of the evidence to sustain the conviction.  See
Cook v. State, 858 S.W.2d 467, 469–70 (Tex. Crim. App. 1993).  In
fact, appellant specifically contends that “[t]he evidence without [Zavala’s]
testimony was clearly insufficient to support a verdict of guilt.”[1]

            Article 38.14 of the Texas Code of
Criminal Procedure provides that “[a] conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.”  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 1979).  This rule is
commonly referred to as the “accomplice witness rule.” 

            The accomplice witness rule is not a
product of either common law or federal constitutional law, but a creation of
the Texas Legislature.  See Blake v. State, 971
S.W.2d 451, 454 (Tex. Crim. App. 1998).  The purpose of the rule is to ensure that the
jury does not consider accomplice witness evidence unless the jury finds both
that the accomplice witness is telling the truth and that other evidence
corroborates the accomplice witness’s testimony.  See Tran v. State, 870 S.W.2d 654, 658 (Tex. App.—Houston [1st
Dist.] 1994, pet. ref’d).  “The rule reflects a legislative
determination that accomplice testimony implicating another person should be
viewed with a measure of caution, because accomplices often have incentives to
lie, such as to avoid punishment or shift blame to another person.”  Blake, 971 S.W.2d at 454 (citations omitted).  The accomplice’s motives in testifying
against the accused may well include malice or an attempt to curry favor with
the government in the form of a lesser punishment, or perhaps, no
punishment.  The Texas Legislature has
determined that because the testimony of an accomplice is inherently
untrustworthy and should be viewed with caution, uncorroborated testimony of an
accomplice, standing alone, is not enough to support a criminal conviction.[2]

            To determine whether an accomplice’s
testimony is corroborated, we eliminate the accomplice testimony and review the
remaining evidence to determine whether it tends to connect the defendant to
the offense.  See Knox v. State, 934 S.W.2d 678, 686
(Tex. Crim. App. 1996).  In applying the test for sufficiency, we must
consider each case on its own facts and circumstances, and we must look to all
facts to determine whether the accomplice testimony is corroborated.  See
Munoz v. State, 853 S.W.2d 558, 559–60 (Tex. Crim. App. 1993). 
The corroborative evidence may be circumstantial or direct, and it need
not establish the defendant’s guilt of the charged offense; rather, it is
sufficient if it “tends” to connect the defendant to the offense.  Id. at 559; Gosch v. State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). 
The combined cumulative weight of the incriminating evidence furnished
by the non-accomplice witnesses that tends to connect the accused with the
commission of the offense supplies the test. 
Mitchell v.
State, 650 S.W.2d 801, 807 (Tex. Crim. App.
1983).  

            We agree with appellant that Zavala
was an accomplice witness because he actively participated in the narcotics
transaction.[3]  See
Herron v. State, 86 S.W.3d 621, 631 (Tex. Crim.
App. 2002) (finding that an accomplice is one who participated in the offense);
Kutzner v. State, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999) (stating that, to be an accomplice, one
must have taken an affirmative act in furtherance of the commission of the
offense).  Therefore, we must examine the
non-accomplice testimony to determine whether the State presented sufficient
evidence that tended to connect appellant with the commission of the
offense.  

            Appellant admitted renting an
acetylene blowtorch.  He testified that
he left his work place with Oscar on January 17, 1998, and got into a U-Haul truck with
two individuals he did not know.  He
stated that he directed them to Oscar’s house and let them into the garage so
that the cylinders could be loaded into the U-Haul.  Although he contends he did not know what was
in the cylinders, he admits he transported them to a nearby grocery store where
he met up with Oscar.  He also admits to
being an occupant of the U-Haul truck that was following Oscar when it was
pulled over by the HPD.  

            The State introduced the testimony
of two HPD officers, Hans Meisel and Armando
Gonzalez, to show that appellant returned the blowtorch to Aztec.  Officers Meisel and
Gonzalez testified that they followed appellant from Oscar’s house on January 15, 2003, to
Aztec.  Officer Gonzalez stated that he
then followed appellant into the store and overheard him discussing a rental
return with a desk clerk.  Officer
Gonzalez said he left at that point, and did not remain at the store to observe
the rest of the transaction, because the surveillance team did not see any
connection between the rental return and the suspected drug trafficking.  Although appellant testified that he never
saw the blowtorch again after Oscar retrieved it from his apartment and
appellant denied returning the blowtorch to Aztec, the jury, as finder of fact,
is the exclusive judge of the credibility of the witnesses and the weight to be
afforded their testimony.  See Wyatt v. State, 23
S.W.3d 18, 23 (Tex. Crim. App. 2000). 
Thus, in the absence of Zavala’s testimony, appellant was connected with
(1) renting and returning the equipment used to conceal the cocaine in the
metal cylinders; (2) directing others to Oscar’s house and letting them into
the garage in order to load the cylinders into the U-Haul truck; (3) loading
the cylinders into the U-Haul truck; and (4) transporting the cylinders in the
U-Haul truck.  This evidence tends to
connect appellant with the offense such that it sufficiently corroborates
Zavala’s testimony. 

            Because we find Zavala’s testimony
was sufficiently corroborated, we find no merit in appellant’s challenge to the
legal sufficiency of the evidence to support the conviction.  Accordingly, we overrule appellant’s first
and second points of error. 

III. 
Factual Sufficiency

            In
his third and forth points of error, appellant challenges the factual
sufficiency of the evidence.  When
evaluating such a challenge, we view all the evidence without the prism of “in
the light most favorable to the prosecution” and set aside the verdict only if
it is “so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.”  Johnson v. State, 23 S.W.3d 1, 6–7 (Tex. Crim. App. 2000).  This concept embraces both “formulations
utilized in civil jurisprudence, i.e., that evidence can be factually
insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust
or (2) the adverse finding is against the great weight and preponderance of the
available evidence.”  Id. at 11.  Under this
formulation, we essentially compare the evidence which tends to prove the
existence of a fact with the evidence that tends to disprove that fact.  Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim.
App. 1996).  In conducting the
factual-sufficiency review, we must employ appropriate deference so that we do
not substitute our judgment for that of the fact finder.  Id. at 648.  Our evaluation
should not intrude upon the fact finder’s role as the sole judge of the weight
and credibility given to any witness’s testimony.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  In
conducting a factual-sufficiency review, we must consider and address the
appellant’s main argument for a finding of insufficiency.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  This practice benefits the parties, maintains
the integrity of the justice system, and improves appellate practice.  Id.  We find the evidence factually insufficient
only when necessary to prevent manifest injustice.  Cain,
958 S.W.2d at 407.

            In support of his
factual-sufficiency challenge, appellant again asserts a lack of affirmative
links between appellant and the cocaine. 
Appellant argues that his presence in the U-Haul truck and his rental of
the blowtorch are acts insufficient to support his conviction.  Appellant contends that, absent the testimony
of Zavala, there is no evidence (1) he assisted filling the cylinders with
cocaine; (2) he knew what the blowtorch was to be used for; or (3) he was aware
of the contents of the cylinders.

            Although  mere presence in the vicinity of contraband
is insufficient to prove that a person exercised control over the contraband or
was a party to the offense, it is a circumstance tending to prove guilt, which,
when combined with other facts, may suffice to show guilt.  See McGoldrick, 682 S.W.2d 573, 578 (Tex.
Crim. App. 1985); Alvarez
v. State, 813 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1991, pet. ref’d) (recognizing link between narcotics hidden in tanker
and defendant riding in separate car by defendant’s pattern of
counter-surveillance).  As set
forth in the foregoing accomplice testimony analysis, several factors
affirmatively linked appellant to the cocaine found in the cylinders in the
U-Haul truck.  Although appellant’s
testimony differed from that of the HPD officers, it was the jury’s duty to
determine the credibility of each witness’s testimony and to decide the weight
to be given the evidence.  See Garza v. State, 633 S.W.2d 508, 514
(Tex. Crim. App. 1981); see also Carr v. State, 694 S.W.2d 123, 128 (Tex. App.—Houston
[14th Dist.] 1985, pet. ref’d).  Considering the evidence
both for and against a finding of guilt, we cannot conclude the jury’s verdict
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  See Johnson, 23 S.W.3d at 6–7. 
Accordingly, we overrule appellant’s third and fourth points of error.

            Having overruled all of appellant’s
points of error, we affirm the trial court’s judgment.

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed December 23, 2003.

Panel
consists of Justices Hudson, Fowler, and Frost.

Do Not
Publish — Tex. R. App.
P. 47.2(b).

 











            [1]  Appellant contends that without Zavala’s
testimony, there is no evidence to show he intentionally or knowingly possessed
cocaine.  He does not challenge the legal
sufficiency of the evidence to support the conviction if Zavala’s testimony
were properly admitted.





            [2]  The corroboration requirement applies only
when the accomplice witness is called by the State.  Blake,
971 S.W.2d at 454.





            [3]  The trial court did not make a finding that
Zavala was an accomplice witness as a matter of law.  It submitted that issue as a question of fact
for resolution by the jury.  Appellant
now argues that Zavala was an accomplice witness as a matter of law and that
the trial court erred by submitting the issue to the jury.  However, appellant did not object to the jury
charge, and thus he has waived any error.